**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| LINDSEY K. SPRINGER, | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) |
| DOUGLAS HORN, MELODY NOBLE NELSON, BRIAN SHERN, and 10 Unknown Agents of the Internal Revenue Service, and Others Unknown, | ) ) ) ) ) ) |
| Defendants. | ) ) |

Case No. 06-CV-156-GKF-FHM

## O P I N I O N  A N D  O R D E R

This matter comes before the Court on the motions to dismiss of defendants Brian Shern ("Shern") (Docket No. 12), Mark K. Collins ("Collins") (Docket No. 29), and Jason C. White ("White") (Docket No. 30).

Plaintiff Lindsey K. Springer ("Springer") asserts two *Bivens*[1] claims against Shern and 10 Unknown Agents of the Internal Revenue Service. In their motions to dismiss, Collins and White state that they are two of the ten unnamed IRS special agents. (Docket No. 31, p.1 fn. 1).

In ruling on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the court assumes the truth of the plaintiff's well-pleaded factual allegations and views them in the light most favorable to the plaintiff. *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The United States Supreme Court has recently prescribed a new standard in ruling on a motion to dismiss: whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1965 (2007).

---

[1] Suits against federal agents for violating constitutional rights are brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which recognizes a cause of action, for money damages, directly under the Constitution.

Courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). A plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss. *Bell Atlantic*, 127 S.Ct. at 1974; *Ridge at Red Hawk*, 493 F.3d at 1177.

On September 16, 2005, Shern, Collins, White, and eight unknown federal agents served a warrant and searched Springer's home. (Docket No. 2, ¶ 52). The agents allegedly discovered $19,000 in cash and counted the money in the presence of Springer's wife. (Docket No. 2, ¶ 56). Springer alleges Shern gave him a receipt for the $19,000. (Docket No. 2, at ¶ 59).

Springer filed a "rule 41 Motion"[2] for return of the money. (Docket No. 2, ¶ 61).[3] On or about November 1, 2005, Shern allegedly called and told Springer "that the U.S. Assistant Attorney had directed him to return the [vehicle] titles [taken during the search] back to Plaintiff." Springer asked Shern about the $19,000 and "Shern responded that he had made a request for it but that it would take two months to get the check." (Docket No. 2, ¶¶ 66, 67). On January 3, 2006, Shern called Springer and left a message that Shern "had received Plaintiff's money and wished to return it to Plaintiff." (Docket No. 2, ¶ 72). On January 7, 2006, Shern appeared at Springer's home and presented a check in the amount of $17,000. (Docket No. 2, ¶74). Springer says he inquired why the check was $2,000 short, and Shern allegedly stated "that the bank deposit was only $17,000 and therefore that is all they can return to Plaintiff." (Docket No. 2, ¶76).

Springer's first *Bivens* claim is directed against Shern, Collins, White, and eight unknown IRS agents for allegedly taking the $2,000. (Docket No. 2, ¶¶ 91 - 95). Springer's second *Bivens*

---

[2] Fed. R. Crim. P. 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property of by the deprivation of property may move for the property's return."

[3] The Court's docket report indicates that Springer filed his motion for return of property on September 23, 2005.

claim is directed against two assistant U.S. attorneys, Douglas Horn and Melody Noble Nelson. Springer's third *Bivens* claim, directed against Horn, Nelson, Shern, and the ten unknown IRS agents, is based on Springer's Fourth Amendment right to be secure against unreasonable searches and seizures. Springer seeks damages of $1,002,000.00. (Docket No. 2, ¶¶ 106 - 114).

*Failure to State a Claim Under the Fourth Amendment*

Movants Shern, Collins, and White argue that "conduct is subject to the Fourth Amendment only "[f]rom the moment of entry until the moment of departure." (Docket No. 13, p. 5, and Docket No. 31, p. 6, *citing Duncan v. Barnes*, 592 F.2d 1336, 1338 (5th Cir. 1979), and *Lawmaster v. Ward*, 125 F.3d 1341, 1349 (10th Cir. 1997). In *Duncan,* law enforcement officers executed a search warrant on the wrong apartment. They broke down the apartment door and two bedroom doors with sledgehammers and forced the occupants – three court reporting students – to stand in the nude while the officers surveyed the rest of the apartment. The district court granted the officers' motion for judgment on the issue of whether the officers acted maliciously, arbitrarily or capriciously in conducting the search, reasoning that the officers had not conducted a "search" but merely "secured the premises." The Fifth Circuit panel held that the Fourth Amendment is not dormant until such time as the intruding officers look for items described in the search warrant, and that there is no constitutionally cognizable distinction between a "search" for items described in a search warrant and a "securing of the premises" during the execution of the warrant. In *Lawmaster*, the plaintiff argued that ATF agents unreasonably ransacked his home in violation of the Fourth Amendment when they spread cigar and cigarette ashes throughout his home and bedding and left his pistol submerged in the dogs' water bowl. The Tenth Circuit observed that the Fourth Amendment provides individuals with security in their homes and that an officer's conduct is subject to the

Fourth Amendment's mandate of reasonableness from the moment of the officer's entry until the moment of departure.  Neither *Duncan* nor *Lawmaster* discuss the outer limits of when and where a seizure of an individual's property in violation of the Fourth Amendment may occur.

Springer alleges in his Complaint that Shern and 10 Unknown Agents [admittedly including Collins and White] played a role in the initial seizure of the $19,000 and the failure to return the full amount to Springer.  Read broadly, Springer's allegations include the possibility that the $2,000 was taken at the home.  Even if the Fourth Amendment were only to address seizures occurring at Springer's premises, Springer's claim against Shern, Collins, and White survives dismissal.

A "seizure" of property, for Fourth Amendment purposes, occurs when there is some meaningful interference with an individual's possessory interests in that property.  *Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004).   The protection of the Fourth Amendment is not confined to seizures that are the outcome of a search.  *Id.*  The Court therefore cannot conclude at this juncture that the protection of the Fourth Amendment could not extend to a seizure of Springer's $2,000 if it occurred sometime after the IRS agents' search of Springer's home.

*Alternative Remedies*

Movants Shern, Collins, and White argue that Springer has an alternative and exclusive remedy for the alleged conversion of his $2,000 – a claim against the United States pursuant to the Federal Tort Claims Act ("FTCA").

The "exclusive remedy" provision of the FTCA "does not extend or apply to a civil action against an employee of the Government . . . which is brought for a violation of the Constitution of the United States."  28 U.S.C. § 2679(b)(2)(A).

WHEREFORE, for the reasons set forth above, the motions to dismiss of defendants Brian Shern (Docket No. 12), Mark K. Collins (Docket No. 29), and Jason C. White (Docket No. 30) are denied.

IT IS SO ORDERED this 1st day of October 2007.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma